1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DANIEL ROBBINS,

                            Petitioner,

    v.

JERRY HOWELL, et. al,

                         Respondents.

Case No. 2:19-cv-02153-APG-VCF

ORDER

10

11

      Daniel Robbins, a Nevada prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  For reasons that follow, I deny the petition.

12

**I. BACKGROUND[1]**

13

14

15

16

17

18

19

      After a jury trial in the Fifth Judicial District Court for Nye County, Nevada, Robbins was found guilty of second-degree murder with use of a deadly weapon, battery with use of a deadly weapon, battery causing substantial bodily harm, and two counts of assault with a deadly weapon.  The conviction arose from an incident in Robbins' driveway that occurred around 1:30 a.m. on August 18, 2021.  Robbins shot his daughter's boyfriend, Chris Mundy, in the neck while Mundy and his 14 year-old companion, P.F.,[2] sat in an idling car on Robbins' driveway. The bullet passed through Mundy's neck, killing him, and struck P.F. in the elbow.

20

21

22

23

      Evidence presented at trial showed that the following events preceded the fatal shooting. A few days before the shooting, Mundy sent Robbins' wife, Katherine Robbins, a friend request on Facebook.  Katherine declined the request and sent Mundy a response calling him "garbage" and castigating him for taking her daughter, Jennifer, away from her family.  In the hours prior to

24

25

26

[1] The information in this section is taken from the state court record filed at ECF Nos. 36 through 49 and this court's docket.  For ease of reading, I omit citations in this section, but I cite to the record as necessary in support of my analysis in Section III., below.  I make no credibility findings or other factual findings in this section, which is merely a backdrop to my consideration of the issues.

27

[2] Because he was a minor at the time, P.F.'s full name is redacted in the state court record.

28

the shooting, Mundy, who was hanging out with friends, responded with a message berating Katherine and Robbins for having Jennifer arrested[3] and claiming that Jennifer was old enough to make her own decisions.  Katherine responded with an expletive-laced message, in all capital letters, calling Mundy derogatory names.  Mundy responded that he was on his way to her home, to which she responded that she would have the police waiting for him.

Shortly thereafter, Robbins sent Mundy a threatening message which included the following passage: "Chris Mundy, you're so brave to talk to my wife like that, you little pussy. Why don't you come up here and say it to my face; otherwise, I'll be more than happy to take care of this at your work."  Mundy responded with "I'm coming, and I'm not scared," to which Robbins replied: "Really?  So bring it, you degenerate looking piece of shit.  I have so many toys to play with…."

Against his friends' advice, Mundy drove to Robbins' house accompanied by P.F., the younger brother of one of his friends.  When Mundy pulled into the driveway, Katherine came out of the house yelling at him to get off her property.  Mundy insisted that he wanted to talk. Robbins then came out of the house with a gun, also yelling at Mundy to get off his property. Robbins fired a shot that hit the front of Mundy's car.  Mundy remained seated staring forward, with the car's engine running.  Robbins then went up to the driver's side window, pressed the gun against Mundy's neck, and pulled the trigger.

In March 2013, the trial court entered a judgment of conviction sentencing Robbins to an aggregate term of 22 years to life.  Robbins appealed.

In July 2014, the Supreme Court of Nevada affirmed the judgment.  In August 2015, Robbins filed a post-conviction petition for writ of habeas corpus in state district court that contained no substantive claims, only a request to file a supplemental brief.  After Robbins waited nearly two years to file the supplemental brief, the state district court denied the petition

---

[3] Evidence presented at trial showed that Jennifer was arrested for domestic violence in relation to an incident at the Robbins' residence earlier that day.

on both substantive and procedural grounds.  Robbins appealed.  In November 2019, the Supreme Court of Nevada affirmed the lower court's denial of the petition.

Robbins initiated this federal habeas proceeding in December 2019.  I granted Robbins' unopposed motion for leave to file an amended petition.  In July 2020, Robbins filed, with the assistance of counsel, his first amended petition for writ of habeas corpus.  The respondents moved to dismiss.  I dismissed Grounds C (in part), D(1), D(2) (in part), D(4), E, F, G, and H.  Grounds A, B, C (in part), D(2) (in part), D(3), and I remain for a decision on the merits.

## II.  STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), which provides the following standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

**III. DISCUSSION**

**A. Ground A -- State's failure to produce vehicle**

In Ground A, Robbins alleges that he was deprived of a fair trial under the Due Process Clause because the State failed to produce the car Mundy was sitting in when he was shot. Robbins claims that such failure prevented him from having a defense expert analyze the trajectory of the shot that hit the front of the car, which would have shown where he was

4

standing and where he shot.  He also claims that access to the car was necessary to analyze the angle of the shot that killed Mundy and the location of the bullet casing found in the car.  In addition, he contends that without the car his counsel was unable to effectively cross-examine the State's expert about the car and the evidence it contained.

In March 2012, Robbins filed a motion for discovery in the state district court that made no specific request regarding the car but did include a request for "any other evidence made regarding Ballistics Evidence obtained from the scene or thereafter." ECF No. 38-7 at 3.  In August 2022, a little over a year after the shooting, Robbins filed a motion in the state district court asking the State to produce the car. ECF No. 39-6.  In opposing the motion, the State claimed that the car had been seized on the night of the murder, then released after being processed and photographed. ECF No. 39-10 at 6.  The State also noted that Robbins had retained counsel in October 2011, but had not made a previous request to produce the car or conduct any type of testing on the car. *Id*.  In September 2012, the state district court heard argument on the motion and denied it. ECF No. 39-17 at 23-45.

In several cases, the Supreme Court of the United States has "consider[ed] what might loosely be called the area of constitutionally guaranteed access to evidence." *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988) (internal quotation omitted).  Two of those cases are pertinent to my inquiry here.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.  In *Youngblood*, the Court recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57.  In those instances, the failure to preserve this "potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." *Id*. at 58.

The Supreme Court of Nevada decided the claim Robbins presents as Ground A as follows:

> Robbins claims that the State's failure to preserve the vehicle driven by Christopher Mundy and the district court's refusal to instruct the jury pursuant to *Sanborn v. State*, 107 Nev. 399, 408, 812 P.2d 1279, 1286 (1991) (an adverse instruction informing the jury that the lost evidence is irrebuttably presumed to be unfavorable to the State), deprived him of a fair trial.

> This court has consistently held that in order to establish a due process violation resulting from the state's loss or destruction of evidence, a defendant must demonstrate either (1) that the state lost or destroyed the evidence in bad faith, or (2) that the loss unduly prejudiced the defendant's case and the evidence possessed an exculpatory value that was apparent before the evidence was destroyed.

> *Klein v. Warden*, 118 Nev. 305, 313, 43 P.3d 1029, 1034 (2002) (internal quotation marks and brackets omitted).  The limited record that Robbins provided on this issue does not demonstrate that the State acted in bad faith or that he was prejudiced by the loss of the vehicle.  Accordingly, we conclude that Robbins has not established a due process violation in this regard.

ECF No. 48-7 at 5-6.

While it did not cite cases from the Supreme Court of the Unites States, the decision is not "contrary to" federal law under  § 2254(d)(1) so long as neither the reasoning nor the result contradicts them. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (noting that the state court need not cite or even be aware of the controlling Supreme Court cases).  The Supreme Court of Nevada's analysis incorporated both *Brady* and *Youngblood* in the sense that it found that Robbins had not shown that the evidence was exculpatory (*Brady*) or that the State had acted in bad faith by not preserving the evidence (*Youngblood*).

In addition, the Supreme Court of Nevada did not unreasonably apply *Brady* or *Youngblood* to the facts of Robbins' case.  Robbins insists that analysis of the shot angles was important to his two defense theories (self-defense and accidental discharge) because he could have demonstrated that the first shot was merely a warning shot and that the second shot was an accident.  He fails, however, to support this claim with an explanation.  Photographs and testimony presented at trial showed where the bullet from the first shot entered and exited the front bumper of the passenger side of the car. ECF No. 42-1 at 73-75.  As for the second shot, the

medical examiner who conducted the autopsy on Mundy's body testified that the gun was pressed against the left side of Mundy's neck when fired and that the bullet "went through his neck transected is spinal cord and then exited the right side of the neck." ECF No. 43-1 at 22-24. And, as noted, the same bullet struck P.F, who was in the front passenger seat, in the elbow. ECF No. 41-1 at 73-77.  Finally, the State also presented a zoomed-out photograph showing the location of the shell casing found in the back seat. ECF No. 42-1 at 89.  I am unable to conceive how analysis of the car itself by a defense expert may have provided Robbins with potentially useful evidence, much less exculpatory evidence.

In addition, Robbins has not shown that the State released the car in bad faith.  The State acted in bad faith only if it had reason to know the car was potentially useful evidence for Robbins. *See Youngblood*, 488 U.S. at 58 (bad faith is confined to "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant").  There is no evidence in the record demonstrating that it is the case.  Robbins claims that the "normal process" in cases like his is for the State to keep the car until after trial, but he cites no evidence or authority to support that contention. ECF No. 81 at 11.

In sum, Robbins has not shown the state court's ruling to be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  The state court's adjudication of Ground A did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.  Nor was its decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court.  Therefore, Ground A is denied.

### B. Ground B – Trial court's refusal to issue a jury instruction on trespassing

In Ground B, Robbins alleges that he was deprived of a fair trial under the Due Process Clause because the trial court denied his request to include a jury instruction defining trespass under Nevada law.  He contends that his defense was premised on the theory that he had the right to protect himself and his family from intrusion and that the evidence supported a finding that

Mundy and P.F. were trespassing when he shot them.  According to Robbins, the trial court's refusal to issue the trespassing instruction deprived him of a fair trial because it prevented him from presenting a complete defense.

At trial, Robbins' counsel asked the trial court to include an instruction (identified as proposed Instruction F) stating: "A trespasser is any person who willfully goes or remains upon any land after having been warned by the owner or occupant thereof not to trespass." ECF No. 44-1 at 40.  The trial judge determined that the proposed instruction would place too much emphasis on trespassing and suggest to the jury that, if it found that the victim was trespassing, it was justifiable for the defendant to shoot him. *Id*. at 41-44.  Accordingly, the court ruled that counsel would be permitted to argue to the jury that Mundy and P.F. were trespassing, but that the court would not issue the proposed instruction. *Id*.  The trial court also refused to issue two additional instructions: proposed Instruction G stating that "[a] landowner is permitted to use reasonable force to eject a trespasser" and proposed Instruction H addressing factors indicating reasonableness in a landowner's actions towards a trespasser. *Id*. at 44-45.

A habeas court's "appraisal of the significance of an error in the instructions to the jury requires a comparison of the instructions which were actually given with those that should have been given." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  To obtain relief based on a trial court's refusal to issue a requested instruction, a habeas petitioner must show that the omission of his proposed instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* (quotations omitted).  The question is whether the instructional "error, in the whole context of the particular case, had a substantial and injurious effect on the jury's verdict." *Calderon v. Coleman*, 525 US. 141, 147 (1998).  Where a petitioner alleges that the trial court refused to give an instruction, his burden is especially heavy.  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.  In reviewing jury instructions, the court inquires as to whether the instructions as a whole were misleading or inadequate to guide the jury's deliberation. *United States v. Garcia–*

*Rivera*, 353 F.3d 788, 792 (9th Cir. 2003) (citing *United States v. Frega*, 179 F.3d 793, 806 n. 16 (9th Cir. 1999)) (internal citations omitted).

The Supreme Court of Nevada decided the claim Robbins presents as Ground B as follows:

> Robbins claims that the district court erred by refusing to give his proposed instructions on trespass because they supported his theory of defense that Christopher Mundy was a trespasser and he used reasonable force to remove Mundy from his property. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). "[A] defendant is entitled to a jury instruction on his theory of the case, so long as there is evidence to support it, regardless of whether the evidence is weak, inconsistent, believable, or incredible." *Hoagland v. State*, 126 Nev. ——, ——, 240 P.3d 1043, 1047 (2010). However, a defendant is not entitled to instructions that are "misleading, inaccurate or duplicitous." *Carter v. State*, 121 Nev. 759, 765, 121 P.3d 592, 596 (2005). Here, the record reveals that the district court heard argument on Robbins' proposed trespass instructions and found that they were misleading and inaccurate because they emphasized the crime of trespass and improperly suggested that if the jury found that the victim had trespassed then it could find that Robbins acted in self-defense and that the homicide was justifiable. The record further reveals that the jury was instructed on justifiable homicide, self-defense, and defense of property. We conclude from this record that the district court did not abuse its discretion by rejecting Robbins' proposed trespass instructions.

ECF No. 48-7 at 3.

Here again, the Supreme Court of Nevada did not cite cases from the Supreme Court of the United States, but its decision is not "contrary to" federal law under § 2254(d)(1) because neither the reasoning nor the result the decision contradicts them. In addition, the Supreme Court of Nevada did not unreasonably apply federal law to the facts of Robbins' case.

Robbins argues that the absence of an instruction defining trespassing resulted in the jury being left to speculate as to the definition and prevented him from developing and arguing his defense to the jury. He further claims that the Supreme Court of Nevada erroneously analyzed all three instructions (proposed Instructions F, G, and H) when he was only challenging the trial court's refusal to issue proposed Instruction F. In addition, he contends the Supreme Court of Nevada's decision is not entitled to deference under § 2254(d) because the court did not compare the instructions which were actually given with those that should have been, as required by

*Henderson*, or address whether he was deprived of his constitutional right to present a defense under *Chambers v. Mississippi*, 410 U.S. 284 (1973) and *Webb v. Texas*, 409 U.S. 95 (1972). I find these arguments to be without merit.

The right to present a defense, as contemplated by *Chambers* and *Webb*, encompasses more fundamental guarantees such as the right to confront and cross-examine witnesses, to call witnesses in one's own behalf, and to be represented by counsel. *See Chambers*, 410 U.S. at 294; *Webb*, 409 U.S. at 98. No Supreme Court case holds that a trial court's refusal to issue a proposed jury instruction implicates a defendant's constitutional right to present a defense.

A defendant is not entitled to have jury instructions in his precise terms if the given instructions adequately embody the defense theory. *See United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996). As noted by the Supreme Court of Nevada, the jury was instructed on justifiable homicide, self-defense, and defense of property. ECF No. 44-2 at 40-47. The fact that Mundy and P.F. were trespassing did not, by itself, constitute a defense to any of the crimes for which Robbins was convicted. Robbins' counsel noted throughout his closing statement that Mundy was trespassing when Robbins shot him. ECF No. 45-1 at 49-85. The State conceded that Mundy was trespassing. *Id*. at 109-10. Even without the proposed instruction, a reasonable juror would have understood and concluded that Mundy and P.F. were trespassing and would have given the fact its appropriate weight in reaching a verdict.

Consequently, Robbins cannot show that the omission of his proposed instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson*, 431 U.S. at 154 (quotations omitted). That being the case, it matters not whether the Supreme Court of Nevada analyzed all three proposed instructions instead of just focusing on proposed Instruction F. Ground B is denied.

### C. Ground C – Prosecutorial misconduct

In Ground C, Robbins alleges that his conviction and sentence are unconstitutional because of prosecutorial misconduct that occurred at his trial. He cites to comments the prosecutor made during closing argument that Robbins "came out of his house, guns blazing";

1   that Robbins "executed the victim"; and that Robbins could see Mundy's hands at the time of the

2   shooting.  He contends that the remarks were egregious misstatements of the facts unsupported

3   by, or contrary to, evidence presented at trial.[4]

4         It is impermissible for the prosecutor to manipulate or misstate the evidence. *Darden v.*

5   *Wainwright*, 477 U.S. 168, 181-82 (1986).  Even so, a habeas petitioner is entitled to relief only

6   if the prosecutor's comments or actions "so infected the trial with unfairness as to make the

7   resulting conviction a denial of due process." *Id.* at 181; *see also Parker v. Matthews*, 567 U.S.

8   37, 45 (2012) (per curiam) (*Darden* standard is "clearly established Federal law" for purposes of

9   28 U.S.C. § 2254(d)).  A trial error provides ground for relief only if the error had "substantial or

10   injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S.

11   619, 637 (1993).

12         The Supreme Court of Nevada decided the claim Robbins presents as Ground C as

13   follows:

14       Robbins claims that the prosecutor committed misconduct during closing
argument by mischaracterizing the evidence and inflaming the passions of the
15   jury.  In particular, Robbins takes exception to the prosecutor's comments that "he
came out of his house, guns blazing," he "executed the victim," and he "could see
16   the victim's hands" at the time of the shooting.  However, Robbins did not object
to the prosecutor's comments and he has not demonstrated plain error because
17   there was no error. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477
(2008) (reviewing unpreserved claims of prosecutorial misconduct for plain
18   error); *Parker v. State*, 109 Nev. 383, 392, 849 P.2d 1062, 1068 (1993)
("Statements by the prosecutor, in argument, indicative of his or her opinion,
19   belief, or knowledge as to the guilt of the accused, when made as a deduction or a
conclusion from evidence introduced in the trial, are permissible and
20   unobjectionable." (first alteration, internal quotation marks, and brackets
omitted)).
21

22   ECF No. 48-7 at 3.

23         The prosecutor's multiple references to "guns blazing" were hyperbolic in the sense that

24   evidence showed that Robbins had only one gun and fired only one shot before approaching the

25   car.  Even so, the evidence, including Robbins' own testimony, also established that Robbins

26
27   [4] I dismissed as time-barred and unexhausted the portion of Ground C based on allegations related to the
prosecutor improperly testifying. ECF No. 65.

28

fired the first shot almost immediately after emerging from his house. ECF No. 41-1 at 69; ECF No. 42-1 at 76-77, 87; ECF No. 43-2 at 85.  So the comments were not a complete misstatement of the facts.  Likewise, there was testimony to support an argument that Robbins could see Mundy's hands when he shot him. ECF No. 41-1 at 69, ECF No. 42-1 at 184; ECF No. 43-2 at 87.  Finally, the prosecutor never argued that Robbins "executed the victim."  Instead, she was merely recounting the testimony of a detective on a subject that came up only because Robbins' counsel brought it up on cross-examination. ECF No. 142-1 at 212-15, ECF No. 45-1 at 129.

Even if improper, the prosecutor's comments fall well short of rendering Robbins' trial fundamentally unfair, *see Darden*, 477 U.S. at 181, or having a "substantial or injurious effect" on the outcome, *see Brecht*, 507 U.S. at 637.  The trial court instructed the jurors that they "must not consider statements of counsel for either side which are unsupported by the evidence, if any such statements have been made," and that "whatever counsel may say, you will bear in mind that it is your duty to be governed by the evidence as you understand it." ECF No. 44-2 at 19, 53; *see Darden*, 477 U.S. at 182 (recognizing that curative jury instructions lessened impact of improper argument).  Uncontroverted evidence presented at trial showed that Robbins came out of his house and, without provocation, shot at the car occupied by Mundy and P.F., then walked up to the driver's side of the car and shot Mundy in the neck and P.F. in the elbow.  In addition, defense counsel addressed in his closing argument both the "guns blazing" comments and the issue regarding Robbins being able see Mundy's hands. ECF No. 45-1 at 52, 69, 84.

In sum, the record does not support a finding that the prosecutor's comments resulted in an unfair trial or could have possibly impacted the jury's verdict.  Because Ground D(2) fails under de novo review, I need not address whether I am required to defer to the state court's decision under § 2254(d)(1).  Ground C is denied.

/ / / /

/ / / /

/ / / /

/ / / /

### D. Ground D(2) – Ineffective assistance of counsel
### (Failure to object to prosecutorial misconduct)

In Ground D(2), Robbins alleges his conviction and sentence violate his constitutional right to effective assistance of counsel because his trial counsel failed to object to the instances of prosecutorial misconduct alleged in Ground C.[5]

To establish a claim of ineffective assistance of counsel (IAC), a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id*. at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Having cited to the *Strickland* standard, the Supreme Court of Nevada, in Robbins' post-conviction proceeding, addressed the claim he now raises as Ground D(2) as follows:

> Appellant next argues that counsel should have objected to prosecutorial misconduct during closing arguments. Appellant raised the underlying claim of prosecutorial misconduct on direct appeal, and this court determined that he did not demonstrate plain error because there was no error. *Robbins v. State*, Docket No. 63007 (Order of Affirmance, July 22, 2014). Under these circumstances, appellant did not demonstrate that his trial counsel's performance was deficient or that there was a reasonable probability of a different outcome had trial counsel objected to the arguments. Therefore, the district court did not err in denying this claim without an evidentiary hearing.

ECF No. 49-9 at 6.

Robbins has not established that the state court's decision was based on an unreasonable determination of the facts. And for reasons discussed above in relation to Ground C, Robbins cannot demonstrate that there is a reasonable probability that the outcome of his trial would have

---

[5] I dismissed as time-barred and unexhausted the portion of Ground D(2) based on allegations related to the prosecutor improperly testifying. ECF No. 65.

1  been different had his trial counsel objected to the prosecutor's comments. *See Kyles v. Whitley*,

2  514 U.S. 419, 436 (1995) (*Strickland* prejudice standard requires greater showing of harm to

3  petitioner than *Brecht*'s harmless-error standard); *Pirtle v. Morgan*, 313 F.3d 1160, 1173 n.8 (9th

4  Cir. 2002) ("[H]armless error analysis under *Brecht* ... involves a lower standard than

5  *Strickland*'s standard for prejudice."(citing *Kyles*)).  Consequently, the state court's adjudication

6  of Ground D(2) did not result in a decision that was contrary to, or involved an unreasonable

7  application of, clearly established federal law.  Ground D(2) is denied.

### E. Ground D(3) – Ineffective assistance of counsel
### (Failure to advise Robbins regarding spousal privilege)

10       In Ground D(3), Robbins alleges that his conviction and sentence violate his

11  constitutional right to effective assistance of counsel because his trial counsel failed to

12  adequately explain the spousal privilege to him.  He contends that counsel did not explain to him

13  that he had the right to assert a privilege under Nev. Rev. Stat. § 49.295(1)(b) and prevent his

14  wife from testifying about communications between him and her.  He further claims a recording

15  of a jail call between him and his wife that was presented at trial contained privileged

16  communications that adversely impacted the result of his trial.

17       When the State called Katherine Robbins as a witness at trial, the trial court notified her

18  of her right to refuse to testify and confirmed that she was waiving that right.[6] ECF No. 41-1 at

19  194-95.  She then testified at length about the shooting and the events leading up to it, her

20  Facebook communications with Mundy, and statements she had made to the police. *Id*. at 197-

21  270.  At the end of direct examination, the State introduced and played for the jury three

22  recordings of conversations between Katherine and Robbins while Robbins was in jail. *Id*. at

23  282-86.

---

[6] Under Nevada law, a spouse has a statutory privilege to refuse to take the stand when called to testify against his or her spouse. Nev. Rev. Stat. § 49.295(1)(a).  In addition, a spouse cannot be examined as to any marital communications without the consent of the other spouse. Nev. Rev. Stat. § 49.295(1)(b).  Ground D(3) is premised on the latter privilege. *See* ECF No. 20 at 22, ECF No. 81 at 35-41.

Having cited to the *Strickland* standard, the Supreme Court of Nevada, in Robbins' post-conviction proceeding, addressed the claim he now raises as Ground D(3) as follows:

> Appellant next argues that counsel should have discussed the right to invoke spousal privilege and the fact that his wife could not be compelled to testify against him. Appellant did not demonstrate that trial counsel's performance was deficient or that he was prejudiced. Appellant's wife was briefly canvassed before she testified, and she waived her right to invoke spousal privilege. NRS 49.295(l)(a) (spousal privilege); *Franco v. State*, 109 Nev. 1229, 1243-44, 866 P.2d 247, 256 (1993) (recognizing that spousal privilege belongs to the testifying spouse). To the extent that appellant argues that he did not consent to his wife revealing privileged marital communications, NRS 49.295(l)(b), some of the specific statements identified by appellant were not confidential. *See Deutscher v. Stat*e, 95 Nev. 669, 683, 601 P.2d 407, 417 (1979) (recognizing that spousal privilege "is intended to protect confidential communications between spouses"); *see also Fields v. State*, 125 Nev. 785, 797, 220 P.3d 709, 717 (2009) (recognizing that warnings that a jail conversation will be recorded defeats the expectation of confidentiality). More importantly, the defense elicited the same testimony from appellant's wife regarding their conversation immediately after the victim was shot and the conversations in jail. And appellant testified that he shot the victim and explained his conversation in jail was an attempt to recall what occurred and not to influence his wife's testimony. Under these circumstances, appellant did not demonstrate that there was a reasonable probability of a different outcome had his wife not testified about what he said immediately after the shooting and during the recorded jail conversations. Therefore, the district court did not err in denying this claim without an evidentiary hearing.

ECF No. 49-9 at 6.

Robbins does not dispute the Supreme Court of Nevada's finding that some of the communications between Robbins and his wife were not confidential. ECF No. 81 at 38. He faults the court for not addressing the communications that were, but he does not identify those statements or show how they may have affected the outcome of his case. *Id*. In his briefs filed with the Supreme Court of Nevada, he cites only to Katherine's testimony that, right after the gun was fired, she asked him, "What happened?" to which he responded, "I think I shot him." ECF No. 49-4 at 41-42; ECF No. 49-8 at 17. The fact that Robbins shot Mundy was not disputed at trial, so that testimony was not harmful to Robbins' defense.

In sum, Robbins has not shown that, but for counsel's failure to explain the spousal privilege to him, there is a reasonable probability that his trial would have ended differently. Thus, I conclude that the Supreme Court of Nevada's adjudication of this claim did not result in

a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Ground D(3) is denied.

### F. Ground I – Cumulative error

In Ground I, Robbins alleges he is entitled to habeas relief due to the cumulative effect of all the errors that occurred at his trial.  The Supreme Court of Nevada rejected Robbins' cumulative error claims on direct appeal and in his post-conviction proceeding, noting both times that Robbins had not demonstrated any error. ECF No. 48-7 at 7; ECF No. 49-89 at 8.

"Cumulative error applies where, 'although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (quoting *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996)).  Not finding any significant trial error, I am not convinced that multiple errors, considered cumulatively, deprived Robbins of a fair trial. Therefore, the Supreme Court of Nevada's rulings were not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States and were not based on an unreasonable determination of the facts in light of the evidence. Ground I is denied.

## IV.  CONCLUSION

For the reasons set forth above, Robbins is not entitled to habeas relief.

### *Certificate of Appealability*

Because this is a final order adverse to Robbins, Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA).  I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment

of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

I decline to issue a certificate of appealability regarding my resolution of any procedural issues or any of Robbins' habeas claims.

I THEREFORE ORDER that Robbins' first amended petition for writ of habeas corpus **(ECF No. 20) is DENIED**. The Clerk shall enter judgment accordingly and close this case.

I FURTHER ORDER that a certificate of appealability is DENIED.

Dated: January 27, 2023

_____
U.S. District Judge Andrew P. Gordon